# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| INTERLOGIC OUTSOURCING, INC., IOI PAYROLL SERVICES, INC., IOI WEST, INC., LAKEVIEW HOLDINGS, INC., LAKEVIEW TECHNOLOGY, INC., MODEARN, INC., and TIMEPLUS SYSTEMS LLC,[1] | Case No. 19-31445-hcd  (Jointly Administered) |
| Debtors. | |
| INTERLOGIC OUTSOURCING, INC., et al., | |
| Plaintiffs, | Adv. Proc. No. 19-_____-___ |
| v. | |
| JONES LAW OFFICE LLC, DSCRIPTION, INC., BLUE BYTE TECHNOLOGY SOLUTIONS, LLC, LASALLE HOSPITALITY GROUP, INC., MSJ ELECTRICAL CONTRACTORS, INC., YENSID JR., LLC d/b/a ACTIVE HEALTH AND WELLNESS CENTER, MKS2, LLC, M. and S. MANAGEMENT CO., INC., PERFORMANCE MACHINE TECHNOLOGIES, INC., COOL STREAM RV DUCTING INC., McDOWELL ENTERPRISES, INC., PRECISION WALL SYSTEMS, INC., JARPOLE ENTERPRISES, LLC d/b/a FORT WAYNE RECOVERY, BURNS RENT-ALLS INC., | |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Interlogic Outsourcing, Inc. (1273); IOI Payroll Services, Inc. (1202); TimePlus Systems, LLC (9477); IOI West, Inc. (1405); Lakeview Technology, Inc. (1451); Lakeview Holdings, Inc. (7589); and ModEarn, Inc. (3473). The location of the Debtors' headquarters is: 1710 Leer Drive, Elkhart, Indiana 46514.

| | |
|---|---|
| A/CCELERATED SERVICES, LLC, | ) |
| AEGEAN RESTAURANT GROUP, | ) |
| AEGEAN ESTIATORIO INC., | ) |
| PIETRO'S ITALIAN RESTAURANT, | ) |
| PIETRO'S WALNUT PIZZERIA, | ) |
| PIETRO'S COAL OVEN PIZZERIA INC., | ) |
| PIETRO'S COAL OVEN PIZZERIA, | ) |
| CLASSIC STEREO, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

The debtors and debtors in possession (collectively, the "Debtors") in the above-captioned jointly administered chapter 11 cases, and as plaintiffs in the above-captioned adversary proceeding, hereby allege for their Complaint, upon knowledge of their own acts and upon information and belief as to all other matters, as follows.

### Introduction

1. The Debtors seek declaratory or, in the alternative, injunctive relief to stay or enjoin the continued prosecution of a lawsuit (the "Elkhart Litigation") brought by Defendants (the "Elkhart Litigation Plaintiffs") in Elkhart County (Indiana) Superior Court (the "Superior Court") against Debtor Interlogic Outsourcing, Inc. ("Interlogic Outsourcing") and five non-Debtor individual defendants who are current and former directors, officers, and employees of the Debtors, including Daniel Wikel, Timothy Daileader, A. Robert O'Brien, Paul McCormick, and Chuck Tiebout (collectively, the "Individual IOI Defendants"),[2] asserting negligence, breach of contract, tortious interference with a business relationship, fraud, conversion, and constructive fraud.

---

[2] At this time, the Debtors are not seeking to stay or enjoin the Elkhart Litigation against Najeeb Khan who was also named as an individual defendant.

2

2. By virtue of the chapter 11 filing, the Elkhart Litigation is subject to the automatic stay under 11 U.S.C. § 362 vis-à-vis Interlogic Outsourcing, Inc. Extending the automatic stay to the Individual IOI Defendants is critical, as continued prosecution of the Elkhart Litigation would harm the Debtors' estate and interfere with the Debtors' ability to navigate successfully and efficiently the chapter 11 process for the benefit of all stakeholders, including the Defendants. Moreover, the naming of the Individual IOI Defendants is merely an attempt by the Elkhart Plaintiffs to evade the proscriptions and limitations of the automatic stay.

3. More specifically, the automatic stay should be extended for four key reasons:

a) *First*, the amended complaint in the Elkhart Litigation contains no specific factual allegations against the Individual IOI Defendants. Instead, the amended complaint does no more than recite conclusory elements of each cause of action as to the "defendants" generally, and, with regard to Individual IOI Defendants Daileader and Wikel, recasts the alleged actions of Interlogic Outsourcing from the first complaint as acts against Daileader and Wikel in a blatant attempt to plead around the automatic stay and strike at the Debtors' assets. These allegations fail to present claims or causes of actions independent of those brought against Interlogic Outsourcing and for which the Individual IOI Defendants would be independently liable, and thus such claims are stayed under the Bankruptcy Code.

b) *Second*, allowing the Elkhart Litigation to proceed would expose the Debtors, including Interlogic Outsourcing, to liabilities under their indemnification obligations. The Debtors are obligated to indemnify all of the Individual IOI Defendants in the Elkhart Litigation, including for their attorneys' fees and defense costs. These obligations render any potential judgments against the indemnified Individual IOI Defendants as judgments against the Debtors. Accordingly, the continuation of the Elkhart

Litigation and the related incurrence of attorneys' fees by the indemnified Individual IOI Defendants will deplete the assets of the Debtors' estate available for potential creditor distributions. The potential claims under the indemnities are likely significant and would dilute any creditor recoveries in these chapter 11 cases. The Individual IOI Defendants have yet to appear in the Elkhart Litigation, but such appearances are due in short order, and will start the clock on the incurrence of attorneys' fees for which the Debtors are liable.

    c)    ***Third***, if the Elkhart Litigation continues against the Individual IOI Defendants, it will distract the Debtors' current directors, officers, and management from their responsibilities to manage the proposed chapter 11 process, by virtue of the Elkhart Litigation Plaintiffs' discovery of them and through their ongoing participation in the defense of the claims against them individually. In addition to considering the strategic and tactical impact of each step in the proceedings, certain of the Debtors' directors and officers may be deposed or called upon to testify before the Superior Court. All of these actions threaten to distract the Debtors' directors, officers, and management at a time when their focus on the Debtors' sale, restructuring process, and claims administration is paramount.

    d)    ***Fourth***, allowing the Elkhart Litigation to advance against the Individual IOI Defendants without Debtor Interlogic Outsourcing's participation risks prejudicing Interlogic Outsourcing's opportunity and ability to defend itself against the claims that have been asserted against it. Should the Elkhart Litigation proceed without Interlogic Outsourcing (while Interlogic Outsourcing is appropriately protected by the automatic stay), and should Interlogic Outsourcing thus miss the chance to participate in and contest items of discovery and fact development, Interlogic Outsourcing may be prejudiced

irreparably, which prejudice will inure to the detriment of the Debtors' estate and all of their stakeholders.

4.     The Debtors thus file this Complaint and respectfully move the Court to extend the automatic stay to cover the Individual IOI Defendants in the Elkhart Litigation until the completion of the Debtors' chapter 11 cases. In the alternative, the Debtors move the Court to enter an injunction barring the Elkhart Litigation Plaintiffs from pursuing the Elkhart Litigation for the same period.

## Jurisdiction and Venue

5.     The United States Bankruptcy Court for the Northern District of Indiana (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.     This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b).

## Parties

7.     Interlogic Outsourcing is an Indiana corporation with its headquarters and principal place of business at 1710 Leer Drive, Elkhart, Indiana 46514.

8.     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Interlogic Outsourcing (1273); IOI Payroll Services, Inc. (1202); TimePlus Systems, LLC (9477); IOI West, Inc. (1405); Lakeview Technology, Inc. (1451); Lakeview Holdings, Inc. (7589); and ModEarn, Inc. (3473). The location of the Debtors' headquarters is: 1710 Leer Drive, Elkhart, Indiana 46514.

9.     The Debtors are directly or indirectly owned by Najeeb Khan.

10.    According to the complaint filed in the Elkhart Litigation, the Elkhart Litigation Plaintiffs are individual corporations headquartered within the United States, and each Elkhart

Litigation Plaintiff was allegedly party to a contract with Interlogic Outsourcing for payroll processing and other related services.

## Nature of the Relief Requested

11. The Debtors seek a declaration that the prosecution of the Elkhart Litigation against the Individual IOI Defendants is stayed until completion of the Debtors' chapter 11 process pursuant to sections 362(a)(1) and (a)(3) of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and rule 7001(9) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In the alternative, the Debtors seek to enjoin prosecution of the Elkhart Litigation until completion of the Debtors' chapter 11 process pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 7001(7).

## Background

12. The Debtors, including Interlogic Outsourcing, provide payroll, payroll tax, and benefit administration services directly to clients in the United States, as well as through a network of licensees in the United States and Canada.

**I.   The Elkhart Litigation.**

13. The Elkhart Litigation was originally filed by defendants Jones Law Office LLC, Dscription, Inc., Blue Bye Technology Solutions, LLC, LaSalle Hospitality Group, Inc., MJS Electrical Contractors, Inc., Yensid Jr., LLC d/b/a Active Health and Wellness Center, and MKS2, LLC on August 9 in the Elkhart Superior Court (Cause No. 20D02-1908-PL-000208), against "Interlogic Intersourcing" and Najeeb Khan. The original plaintiffs asserted violations of Indiana state law and sought a temporary restraining order against Najeeb Khan, based on, *inter alia*, events that occurred during the month of July 2019.

14. On August 16, 2019, the Elkhart Superior Court granted a temporary restraining order against Najeeb Khan.

**II.      The Amended Complaint.**

15. On August 18, 2019, after the Debtors had filed their voluntary petitions for chapter 11 relief, the Elkhart Litigation Plaintiffs filed their Amended Complaint for Damages and Crossclaim (the "Amended Complaint").

16. The Amended Complaint included a number of additional plaintiffs (named herein as defendants) and, for the first time, named the Individual IOI Defendants and correctly named Interlogic Outsourcing as defendants.

17. The Elkhart Litigation Plaintiffs allege that Interlogic Outsourcing and the Individual IOI Defendants improperly removed funds from their bank accounts to pay payroll-related state and federal taxes, wages, and garnishments, among other things. Interlogic Outsourcing is allegedly responsible for making required payments to the relevant state and federal tax authorities, as well as payroll-related payments to the Elkhart Litigation Plaintiffs' employees. The Elkhart Litigation Plaintiffs assert that as a result of Interlogic Outsourcing's actions, however, certain payments were never made.

18. The Elkhart Litigation Plaintiffs assert claims for negligence, breach of contract, tortious interference with a business relationship, fraud, conversion, and constructive fraud.

19. The Elkhart Litigation Plaintiffs seek damages, including treble and punitive damages for all damages sustained as a result of the wrongdoing alleged. According to the Amended Complaint, the Elkhart Litigation Plaintiffs are not seeking a temporary restraining order or preliminary injunctive relief against any defendants other than Najeeb Khan.

20. The Elkhart Litigation Plaintiffs also assert a crossclaim against Elkhart Litigation Plaintiff KeyBank National Association ("KeyBank") for respondeat superior, conversion, constructive fraud, and tortious interference with a business relationship.

21.     The Elkhart Litigation Plaintiffs fail to allege causes of action against the Individual IOI Defendants independent from those alleged against Interlogic Outsourcing.  Instead, the Elkhart Litigation Plaintiffs recite conclusory elements of each cause of action as to all "defendants."

### III.     The Debtors' Indemnification Obligations.

22.     The Debtors have indemnification obligations to the Individual IOI Defendants.  The potential claims under the indemnities are significant and include the costs of defending the Elkhart Litigation.

23.     The Debtors have indemnification obligations to Individual IOI Defendant Wikel under that certain engagement letter entered into by and between the Debtors and Huron Consulting Services LLC, dated July 13, 2019 (the "Huron Agreement").  Under the Huron Agreement, the Debtors agreed to "indemnify and hold [Mr. Wikel] harmless against all costs, fees, expenses, damages, and liabilities (including reasonable defense costs and legal fees), associated with any legal proceeding or claim brought against [Mr. Wikel] by a third party . . . arising from or relating to . . . [his] engagement."

24.     The Debtors have indemnification obligations to Individual IOI Defendant Daileader under that certain Independent Director Agreement, effective as of July 13, 2019 (the "Daileader Agreement").  Under the Daileader Agreement, the Debtors agreed to "indemnity and hold harmless [Mr. Daileader] to the fullest extent authorized by Delaware law or any other applicable law or rule against all Expenses," which include "expenses, liabilities and losses (including, without limitation, attorneys' fees, retainers, expert and witness fees, disbursements and expenses of counsel, judgments, fines, excise taxes or penalties and amount paid or to be paid in settlement)" "in any Proceeding by reason of the fact that [Mr. Daileader] . . . is or was an independent Director of the [Debtors]."

25. In addition, under the Bylaws of Interlogic Outsourcing, Interlogic Outsourcing has a duty to indemnify "[e]very person who is or was a Director, Officer or employee of the Corporation . . . against all liability and reasonable expense incurred by such person in his or her official capacity, provided that such person is determined . . . to have met the [required] standard of conduct." Consequently, the Debtors have an indemnification obligation for all of the Individual IOI Defendants.[3]

26. If the Elkhart Litigation continues and is not stayed or enjoined as it relates to the Individual IOI Defendants, the Debtors' estate will be harmed and efforts to successfully and efficiently move through these chapter 11 proceedings, sale process, and claims administration, will be materially impacted.

27. *First*, the Elkhart Litigation has triggered the Debtors' various indemnification obligations. The Debtors are obligated to indemnify all of the Individual IOI Defendants for losses, including defense costs and damages related to the Elkhart Litigation. The indemnified Individual IOI Defendants will have claims against the Debtors' estate for those losses, rendering judgments against those Individual IOI Defendants a judgment against the Debtors, and allowing the ongoing litigation costs of the Individual IOI Defendants to dilute or deplete the estate's resources available for other creditors.[4] Only through the extension of the automatic stay would the Debtors be protected from the exposure, costs, and distractions associated with this litigation.

---

[3] The Debtors believe that Mr. Khan's alleged behavior falls outside of the scope of conduct for which the Debtors' indemnity obligations are triggered. Accordingly, the Debtors believe that Mr. Khan is not entitled to indemnification. Nevertheless, the Debtors are likely to incur significant legal fees in defending this position.

[4] Nothing contained herein is intended or shall be construed as: (a) an admission that any claim against Debtors is valid; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claims; or (d) a waiver of the Debtors' or other party in interest's rights under the Bankruptcy Code or any other applicable law.

28. ***Second***, if the Elkhart Litigation continues against the Individual IOI Defendants, the Debtors will continue to face burdensome discovery. Further, individual directors, officers, and management whose full attention to these chapter 11 proceedings, particularly the proposed sale process and claims administration, is critical, will be distracted by ongoing discovery and by other proceedings in the Elkhart Litigation, including preparation for summary judgment and then for trial.

29. A stay of the Elkhart Litigation would allow the Debtors' directors and officers to focus on their primary responsibility to the Debtors' stakeholders and shepherd the Debtors through these chapter 11 proceedings, the proposed sale process, and claims administration.

30. ***Third***, allowing the Elkhart Litigation to proceed against the Individual IOI Defendants while claims against the Debtor Interlogic Outsourcing are stayed risks prejudicing Interlogic Outsourcing. Testimony in depositions in which Interlogic Outsourcing does not participate may create an incomplete record of evidence with respect to Interlogic Outsourcing's defenses. Even more problematic, any substantive ruling as to the Individual IOI Defendants will, as a practical matter, be the law of the case, operative as to all parties, including Interlogic Outsourcing. Simply put, it is unlikely the Superior Court would depart from a ruling against Individual IOI Defendants if Interlogic Outsourcing later attempts to present its position on the same or a similar issue. Thus, the continuation of the Elkhart Litigation could adversely impact Interlogic Outsourcing's ability later to defend itself against claims in that litigation.[5]

---

[5] And should Interlogic Outsourcing participate in the Elkhart Litigation to avoid such outcomes, this would defeat the Congressional intent of the automatic stay.

**Claims for Relief**

**Count I:  Section 362 Declaratory Judgment**

31. The Debtors repeat and re-allege each and every allegation contained in the preceding paragraphs and incorporates them by reference as though fully set forth herein.

32. The Debtors seek an order staying the Elkhart Litigation until completion of the Debtors' chapter 11 process, pursuant to sections 362(a)(1) and 362(a)(3) of the Bankruptcy Code.

33. The extension of the stay is warranted because the Elkhart Litigation is an effort to evade the proscriptions of section 362 of the Bankruptcy Code, which seeks relief against the Debtors and the Debtors' assets.

34. The extension of the stay is further warranted and necessary because continuation of the Elkhart Litigation against the Individual IOI Defendants exposes the Debtors to indemnification claims by the Individual IOI Defendants, potentially diluting the property of the Debtors' estate available for creditor recoveries and creating an identity of interest between the Debtors and the indemnified Individual IOI Defendants.   These indemnification obligations also will force the Debtors to enforce insurance coverage, possibly leading to litigation against the insurance companies, further depleting the resources of the estate.

35. The extension of the stay is further warranted and necessary because continuation of the Elkhart Litigation against the Individual IOI Defendants means the Debtors, and individuals key to these chapter 11 proceedings, will continue to face burdensome discovery and litigation obligations that will distract those individuals from their primary responsibility of shepherding the Debtors through these chapter 11 proceedings.

36. The extension of the stay is likewise warranted and necessary because the continuation of the Elkhart Litigation against the Individual IOI Defendants may harm Debtor Interlogic Outsourcing's ability and opportunity to defend itself in the Elkhart Litigation, including

through substantive rulings that may issue without Interlogic Outsourcing's input or through deposition testimony that may be taken on issues relevant to Interlogic Outsourcing's defense, without its participation.

37. In short, allowing the Elkhart Litigation to continue will drain estate resources and distract from the Debtors' efforts to successfully and expeditiously move through these bankruptcy proceedings, and, thwarting the statutory purpose of these chapter 11 proceedings, fail to provide the Debtors with a breathing spell from litigation pressures in their efforts to achieve a resolution that advances the interests of all constituents. Accordingly, the Debtors respectfully submit that the Court should extend the automatic stay to cover the Individual IOI Defendants.

38. Based on the foregoing, the Debtors seek a declaratory judgment extending the automatic stay against the Individual IOI Defendants pursuant to sections 362(a)(1) and 362(a)(3) of the Bankruptcy Code.

## Count II: Section 105 Injunctive Relief

39. The Debtors repeat and re-allege each and every allegation contained in the preceding paragraphs and incorporates them by reference as though fully set forth herein.

40. Alternatively, in the event the Court declines to extend the automatic stay, the Debtors seek an injunction pursuant to section 105 of the Bankruptcy Code barring the continued prosecution of the Elkhart Litigation against the Individual IOI Defendants until completion of the Debtors' chapter 11 process.

41. Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." Relief under section 105 is particularly appropriate where it would help a debtor confirm a plan of reorganization and preserve property of the debtor's estate.

42. Here, as discussed above, the continuation of the Elkhart Litigation will diminish and interfere with the property of the Debtors' estate and threaten their ability to successfully and efficiently proceed with these bankruptcy proceedings and the proposed sale process. Thus, the Court should apply section 105(a) to enjoin the continuation of the Elkhart Litigation against the Individual IOI Defendants.

43. If the Elkhart Litigation is not enjoined, there is a substantial likelihood of irreparable injuries to the Debtors, which include indemnification obligations to Individual IOI Defendants (for which, if incurred, the Debtors will have no recourse to reverse); the depletion of estate resources to enforce applicable insurance coverage to fulfill the Debtors' indemnification obligations; the distraction of key personnel from their obligations in these chapter 11 proceedings; and an adverse impact on Interlogic Outsourcing's ability and opportunity to defend itself against the Elkhart Litigation.

44. The likelihood of irreparable harm to the Debtors from the continuation of the Elkhart Litigation far outweighs any risk of harm to the Elkhart Litigation Plaintiffs should the Court enjoin the Elkhart Litigation until the completion of the Debtors' chapter 11 process. The Elkhart Litigation Plaintiffs will suffer no material harm, as they would be free to pursue their claims against the Individual IOI Defendants at that time.

45. The injunctive relief sought will serve the public interest by promoting the Debtors' speedy and successful conclusion of these chapter 11 proceedings—a benefit to all constituencies, including the Elkhart Litigation Plaintiffs—and will advance the objective of the automatic stay.

46. If the relief sought is granted, there is a substantial likelihood that the Debtors will prevail on the merits of their request for declaratory relief and for an injunction until completion of the Debtors' chapter 11 process. The Court has the authority to grant such relief on this basis.

47. Based on the foregoing, the Debtors seek an injunction under section 105 of the Bankruptcy Code to enjoin the Elkhart Litigation until completion of the Debtors' chapter 11 process.

[*Remainder of Page Intentionally Left Blank*]

## **Prayer for Relief**

WHEREFORE, the Debtors respectfully demand judgment against the Defendants and pray for relief as follows:

(i) entry of a declaratory judgment that the Elkhart Litigation is stayed pursuant to section 362 of the Bankruptcy Code and Bankruptcy Rule 7001(9) until completion of the Debtors' chapter 11 process; and/or

(ii) in the alternative, entry of an injunction pursuant to section 105 of the Bankruptcy Code (and Bankruptcy Rule 7001(7)) enjoining and prohibiting continuation of the Elkhart Litigation against the Individual IOI Defendants until completion of the chapter 11 process; and/or

(iii) such other and further relief as the Court may deem just and proper.

[*Remainder of Page Intentionally Left Blank*]

Dated: September 10, 2019
South Bend, Indiana

/s/ Andrew T. Kight
Andrew T. Kight
Michael W. Hile
Christine K. Jacobson
**JACOBSON HILE KIGHT LLC**
The Elliott House
108 East 9th Street
Indianapolis, Indiana 46202
Telephone: (317) 608-1140

- and -

Matthew M. Murphy (*pro hac vice* admission pending)
Nathan S. Gimpel (*pro hac vice* admission pending)
Michael Whalen (*pro hac vice* admission pending)
Matthew Smart (*pro hac vice* admission pending)
**PAUL HASTINGS LLP**
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100

*Proposed Co-Counsel to the Debtors and Debtors in Possession*